Good morning and welcome to the Ninth Circuit. Judge Bybee and I are pleased to welcome our colleague, Judge Gaitan, from the Western District of Missouri, who is sitting with us by designation. The first case for argument this morning are the consolidated for argument cases of Velasquez-Reyes v. Samsung and Samsung v. Ramirez. And you may proceed. Good morning and may it please the Court. I'm Rob Kederberg for Samsung. I'd like to please reserve five minutes for rebuttal. The issue in these cases is whether arbitration agreements with Samsung were formed when Mr. Ramirez and Ms. Velasquez-Reyes purchased and used their phones. Under California law, that turns on whether a reasonably prudent smartphone purchaser in their position would be deemed on notice from materials provided with the phones that there were terms and conditions that applied. The packaging and documentation for these phones easily satisfies that standard because one, the outside of the box told consumers that device purchase was subject to Samsung terms and conditions. Two, the Samsung guidebook of key information in the box told users on the first page right under the cover that the booklet contained terms and conditions and by using the phone, you accept those terms and conditions. And three, the arbitration provision here is set up in the guidebook as a freestanding provision that's independent from Samsung's warranty. Each of those features specifically remedies a shortcoming that the court in Norcia found with an older model of Samsung smartphone and collectively they provide a degree of in Norcia. Through these mechanisms, the fact that there were terms involved was called to the attention of the recipients, which is the touchstone under California law. Now we'd submit that the most important thing for the court to focus on is that language on the inside cover of the guidebook. In Norcia, an arbitration provision was buried deep inside a product brochure that gave no indication anywhere that it contained terms and conditions. So as a result, the court said that Norcia came within the rule that a contract is not formed where the document, A, does not appear to be a contract and B, the terms are not called to the attention of the recipient. Here in contrast, the first inside page of the brochure proclaimed in boldface center type, this document contains important terms and conditions with respect to your device by using- Before you, you're now, you had to get inside the book to see that, right? Well, absolutely. If you remind us again, what does the cover of the booklet say? The cover of the booklet says product, it's slightly different in the two different versions in the two cases, but in the Ramirez case, it's product safety and warranty information. On the other, it's health and safety and warranty guide. And what in the world would one think in reading that? It doesn't say that you're going to open it up and there's going to be terms and conditions? That's really, I think, one of the difficulties that you have to overcome. And there's two I'd like you to address. One is that there's no clear statement there that what you're going to be opening up is terms and conditions under which you may not use the phone unless you agree to those. And the second is, does it matter here that this relates to these third party sellers who basically take it all out, give you the phone, put everything into the bag, and so you're not even going through the steps that you would do if you were the kind of the initial recipient. Do those facts matter? So let me take the second one first because I think Norcia directly addresses it. So in Norcia itself, it was undisputed, undisputed fact that the purchaser left everything at the store. They didn't take the bag or any of the contents with them. The same facts were present allegedly there that Your Honor just described about how the store employee, you know, set up the device and all that. And that did not make a difference. The court in Norcia moved on to this analysis of whether the reasonable purchaser was put on notice because a reasonable purchaser could choose to keep that stuff and look at it or could choose not to. So it turns on whether notice is given based on the packaging and documentation. Now as to the other question. I don't think that quite answers Judge McEwen's question because in Norcia, we decided that of course that what you gave them was not sufficient. So the fact as to what they got from the third-party seller became irrelevant. It's like it could have been an alternative holding. The Norcia court might have thought this is also infirm, but it didn't need to reach it once it reached the other question. You have to win on both points. Norcia passed quickly over that because they said that reasonable consumers, when consumers receive things, it's their choice whether they want to discard it or leave it behind or take it with them. And it just so happened that there they left it behind. But that was not the dispositive distinction that Norcia made. Now as to the brochure itself, the title of the brochure is not dispositive because what that essentially would assume is that this guidebook never gets opened. If it's opened, it absolutely cannot be missed that there are terms and conditions inside that apply to the use of the device. So the only way that the decisions below, which I think it's fair to say both decisions did turn on this distinction of whether the guidebook can be assumed to be open or not, the only way those decisions make sense is to assume that the box, excuse me, the booklet stays permanently shut. It essentially becomes a paperweight. What do we do? What do we do? Norcia drew a distinction between warranty and contract, said warranty is the promises that a seller is making about their product. And your booklet says health and safety and warranty guide. It doesn't say contract with Samsung. The cover contains that title. But if you look immediately inside the cover, the very first page says this document contains important terms and conditions with respect to your device. Terms and conditions could be the terms and conditions of the warranty. Or the health and safety or the products. But it's not in that key language on the inside page of the guidebook. It's not in any way limited to the warranty. And then if we flip a couple more pages. But you haven't been alerted that there's anything else other than a warranty or health and safety. Oh, if you only look at the first, at the opening cover. But I'd also like to. First you look at the title and it's not dispositive, I agree, but it does tell you what's in there. Either health and safety and warranty or product safety and warranty. Neither of which conveys that there's going to be some kind of terms and conditions that you are going to accept in terms of other matters. Then you open it up and it says there's terms and conditions. So we still don't know any more than we knew on page one. Now you're saying let's go to page three or further in. Well you get, you get there, to be clear, you get there on the first page immediately inside the guidebook. But the table. We've gone over that. Okay. We've gone over the cover. We've gone on the inside page. So let's not beat to death the inside page. I understand. After the inside page you then go to what? The page immediately after the inside page talks again about, talks specifically about arbitration. So the inside page gives notice that there's going to be terms and conditions and the page after that talks specifically about arbitration. And then there's a table of contents which is critically structured differently than the one in NORCIA in which the arbitration provision appears as a standalone entry. It's not within the warranty. So the important thing to note about NORCIA is in NORCIA the arbitration provision was literally embedded within the warranty. It was part of frequently asked questions about the warranty. So you had questions like what's covered under the warranty? What do I need to do to get warranty service? And then on par with that you have what's the procedure for resolving disputes? Here it's taken out of the warranty. It's in a standalone freestanding section. Now also on this larger issue of whether a reasonable consumer can be assumed or expected to open documents, think about all of the cases in California and elsewhere where consumers are held to terms that they receive in envelopes in the mail. You could receive an envelope from a bank, from a credit card company that has your billing statement and there's nothing on the outside of the envelope that says there's terms and conditions inside. But still, all of these cases assume that reasonable consumers open the mail and likewise the court can assume here that when somebody spends hundreds of dollars on an expensive state-of-the-art technology device that they're going to carry with them for most of their waking hours and use dozens of times a day, that they're going to at least crack the cover of an important brochure that contains safety information in order to see what's inside. Think about tort cases, failure to warn cases. There's nothing that says that a warning has to be on the cover of a document and it's ignored if it's immediately inside the document. In this court in Oltman, which is a case cited in our brief, 538F3rd at 1271, enforced a one-year limitations period for cruise ship passenger suits based on a travel booklet that they're handed when they get on the ship that starts with the itinerary and the contractual language doesn't start until page 11. So to impose a more rigid rule here would essentially be an arbitration-specific rule that would run headlong into the Supreme Court's admonition that arbitration agreements have to be placed on equal footing with other types of contracts. Now I haven't talked yet about the outside of the box. The outside of the box, before we even get to the guidebook, says device purchased subject to additional Samsung terms and conditions, and that's another important distinction from NORCIA because in NORCIA the court emphasized that the outside of the Galaxy S4 box did not notify the consumer that opening the box would be considered agreement. That's from page 1287. I want to be very clear about something. A notification on the outside of a product box is not legally required for contract formation, and so we know that from Hill v. Gateway, which is sort of a bedrock case in this area. There was no language on the outside of the Gateway 2000 computer box there, but the Seventh Circuit specifically rejected the notion that that made a difference. But here we have belt and suspenders because the notifications provide the terms and conditions alert on the outside of the boxes as well as in the guidebooks. Now in NORCIA, this court expressed perhaps some doubt about whether California would recognize the principles of in-the-box terms, in-the-box contracting in cases like Hill v. Gateway. And I want to emphasize the two recent decisions of two different California Courts of Appeal that now confirm that California, like every other jurisdiction, recognizes the principle in Hill. So in Chau, the Second District Court of Appeal reversed a denial of a motion to compel arbitration based on terms provided by mail, and likewise in Scholdner, the First District Court of Appeal said that somebody who bought gift cards at an office depot was bound by an agreement that came inside the gift card packaging and was not disclosed at the time of purchase. I see my time is running low. I'd like to reserve the remaining time for rebuttal. You may. May it please the Court, Jordan Elias for Plano-Fanapoli, Dulce, Alondra, Velazquez-Reyes. The District Court correctly concluded that no arbitration agreement was ever formed between Samsung and Ms. Reyes. The Court reached that conclusion under this Court's NORCIA precedent, because in both NORCIA and this case, Samsung's agreement was not called to the attention of the consumer and it wasn't made- So, Counsel, if you were crafting a bright line rule, if you were sitting in our seats and wanted to give sort of a bright line rule, what would you tell Samsung? What have they got to do? They have competing interests in consumers and others, all of which have to be on a box, all of which have to be in bold, all of which have to be in 16-point type, and at some point the boxes just become too big and overwhelm the phone. So what would you say has to be there? Well, so the bright line rule derives from California law, and it has to do with this specific context of contracting, where the means of acceptance of the offer is to be through inaction or silence. And under those circumstances, California law has long held that the offer has to be clearly and conspicuously disclosed to the offeree. So if we just had the electronic click, that all of us don't ever read it, just click, that would be sufficient? Well, of course, click wrap is a different context of contracting, Your Honor, and the law is still developing in that context, and one of the concepts there is the proximity of the terms in relation to what the consumer clicks. But if you were at the third-party seller, if you were at a Verizon store buying this and the guy selling it says, I can set it up for you, but you will have to go through a little stuff here on the monitor, and you just had to click something that says, I've read the terms and conditions and agree, that would be sufficient? I think that could be a way that Samsung could alter its business practices to come into compliance with Norcia. That was a very mealy answer. Well, you know— Kind of a yes or—you can give it kind of a yes or no. I'm asking for a bright line rule, so a way that Samsung could come into compliance with its obligations is a pretty mealy answer. Well, it's hard to give a definitive answer unless you see all of the evidence, because this is a totality of circumstances test, but— Well, let's start with everything that you get. You get the box. Inside the box is the telephone and a booklet, correct? This box says, as I understand, and I don't want to mix up the different models of the phone, but that there's terms and conditions, right? Correct. Does it say that on the box? Correct. Okay. So, by looking at the box, you know there's going to be other terms and conditions. Does the box say that by opening the box, you accept the terms and conditions? No, it does not say that. Okay. So, there—I mean, I'm not suggesting how Samsung should write this, but there is a possibility there that it could—what if it said, additional terms and conditions inside. By opening this box, you accept these terms and conditions. Is that all right? It could be. You would have to look at the packaging— It could be or it could not be. Well, you have to look at the packaging inside as well, because what that does not state, Your Honor, is where the terms and conditions can be found. So, let me read to you. This is in the record with Samsung. Now, let me keep asking a few questions, because, you know, you keep wanting to say, well, this isn't good enough, but when asked what's good enough, you're not able to tell us. So— No, I could tell you what's— Now I've opened—now I have the box. Yes. Now I open the box, and inside the box, it says, um, Health and Safety and Warranty Guide and Terms and Conditions. Is that enough notice if it puts that on the cover of the piece—the big booklet inside? Yes, I believe that would be if you have the disclosure on the box that Your Honor stated. Now, here's what Samsung currently says on the box. Important information. If you open the package, use or retain this device, you accept Samsung's terms and conditions, including an arbitration agreement. Full terms, warranty, and opt-out information can be found in the enclosed materials. That's in the record in the Ramirez record. That's what was on the box here? That's what's on their current box? That's on their current box, and that's in the record at Ramirez ER 39. That's not what was on this box. No. So that's what they do now, and that shows that they can— Now let's stop there. Yes. Is that sufficient? I believe that would be sufficient, and that's what they did after this Court handed down NORCIA, which goes to show that they're perfectly capable of doing this. Complying with the California principle of law is not going to upend their business model in any way. They're trying to get the benefit of doing it wrong, but they know how to do it right. And so both district courts— I don't think you can say they're trying to get the benefit of doing it wrong. I mean, that was the packaging in play when your clients bought the telephone. So that was without the benefit of NORCIA, correct? I believe that they designed the packaging before NORCIA, correct. Okay. I'm happy to entertain further questions. Judge McKeown? No. I mean, basically you said that the current packaging is fine, and this packaging is deficient. Is that right? Yes. Okay. So if I could say a little bit more, I think the primary distinction that I hear Samsung trying to make from NORCIA is this reference on the box to terms and conditions. The panel asked Mr. Kederberg about the brochure, so I don't think I need to belabor that other than to say it's not really freestanding, because the arbitration agreement is enclosed within the booklet. So it may be a standalone section, but it's not a standalone document. And then turning to the box, this terms and conditions reference really is vague to the point of being meaningless, and it doesn't get Samsung across the line to giving fair notice for at least three reasons. First, just purely focusing on the form, the language is very hard to pick out. It's in the middle of the paragraph in fine print at the very bottom of the back of the box in the smallest print on the box. So it's not prominent or conspicuous as is required in this contractual setting by California law. Second, even if somebody were to see that reference on the box, it's inexplicably placed between two sentences that talk about corporate intellectual property rights. So it's really— Can I just go back to something you said about the freestanding arbitration agreement? Is it your position that the arbitration agreement needs to be a separate piece of paper? No. All right. I just want to make sure. So it can be inside of a product safety terms and conditions and warranty booklet? That's right, assuming it's properly labeled. Thank you. So this—we have to look at the context and the totality of circumstances test, and this one is placed in between two sentences that are full of legalese, and it's really not clear from that reference that the terms and conditions are going to bind the consumer if she simply uses the phone. And this reference doesn't make that condition clear. And then the simple phrase terms and conditions says nothing about where to find those terms. It doesn't say that they're enclosed within the box. And again, the brochure is not labeled terms and conditions, doesn't appear to be a contract. So a reasonable consumer really couldn't put two and two together, just like in Norcia. It's Samsung's burden to show the existence of an agreement, and Samsung hasn't carried that burden. A reasonable consumer would not open a booklet entitled Health and Safely and Warranty Guide unless they need to invoke the warranty, unless there's a product problem, or they have reason to think that their health or safety are in danger. And that is not the case when somebody buys a smartphone. So we respectfully urge the court to affirm the decision, not only in our case, the Ray's case, but also in the Ramirez case. And with the court's indulgence, Mr. Brannick is prepared to give some additional reasons for affirmance. Thank you. Good morning, Your Honors. May it please the court, I'm Steve Brannick of Brannick and Humphrey's here representing Mr. Ramirez. If I may, let me start with what does Samsung need to do to get this right, because I don't think it's that hard. The first thing they could do to get this right is just to use a CLIPRAC agreement. Courts all over the country enforce CLIPRAC agreements all the time, and they do it because it solves both of the problems that Samsung has here. First, it makes it absolutely clear that the consumer has seen the terms and conditions. If you have a box that you have to scroll through and you have to click I accept before you're allowed to use the device, there is absolutely no ambiguity that the consumer has seen the terms, had the opportunity to read the terms, and has assented to those terms. So that's the very simple way to do this. Just make sure that the consumer clicks I accept before they use the phone. But if they don't want to use a CLIPRAC agreement, then they can do what they did in the box in the Galaxy S8, which is in the record at ER39, which Mr. Elias talked about, which is instead of burying a reference to terms and conditions in some fine print at the bottom of the box, have a paragraph that says, important information, terms and conditions are inside this box. Your opening of the box and your use of this product is going to constitute acceptance of those terms and conditions. And then if you couple that with a brochure inside the box that says terms and conditions instead of product safety and warranty information, then again, that solves the problem that they have here. So it's not that hard. And that's what they should be compelled to do. Remember, this is their burden. They're the ones that want to enforce this contract. They're the ones that need to take the steps to make sure that the consumer sees the fact that they are offering to contract. I want to talk a little bit about the Norcia case, because I think Norcia recognizes two propositions of California law that decide this case. The first proposition is that consumers can't be bound by terms of which they are unaware. And the undisputed facts here are that both Mr. Ramirez in our case and Mr. Vallis was in the other case were not aware of any offer to contract. And the second proposition of California law is it's not good enough just to put some stuff in the box. Consumers are not deemed to have accepted something that's in the box by their mere silence. Again, consumers can't accept terms of which they are unaware. Those two propositions, both recognized in Norcia, decide this case. Particularly, it's easy in this case because the undisputed facts are that our client, Mr. Ramirez, never saw the materials. The materials were never brought to his attention. He never looked at them. The bag disappeared before he ever had a chance to get inside them. So to me, that ends this case. Now, Samsung says that there is some sort of reasonable consumer test that applies, and I think they overstate that. I think courts in these cases have to look as a matter of fact to see whether the consumer in fact saw the materials. And in some cases, the consumer denies the materials, so the court has to go through a normal factual analysis to see whether that denial is credible. But there isn't a single California case where either a court has found that there was no notice or the undisputed facts were that there were notice. There's no case that in the face of a determination that the consumer never saw the operative contract, that the court still, under some sort of reasonable consumer test, enforces a contract that the consumer never saw. So I think they overstate the existence of this reasonable consumer test. So let's say we've got the perfect box with the perfect booklet, with the perfect title, with the perfect call-out for arbitration. But then we have the situation where a reseller or somebody else says, here, here's your telephone, and then there goes the box. So then are they still back in the soup, in your view? I think that the consumer in that case would still have a very good argument that they were not aware of the offer to contract. I mean, I think— No fault of Samsung? Well— Do they sue Verizon? They sue a third-party reseller? Who did they sue? Remember, if Samsung wants to offer a contract to a consumer, it is its burden to make sure that that contract gets offered at the burden. If it— It's offered. It's in the box. You can't open the box without seeing the language there. But if somebody else has entrusted somebody else to open the box for them— If Samsung chooses to leave that important offer to contract to some intermediate third party, and the record shows here in both of these cases, and other courts have commented on this, that the industry practice is to just set up the phone and tuck this stuff away, I still think that that's a problem for them. I mean, I don't need the court to go that far to resolve my case because— But the reason I'm asking is because it, you know, it's like Samsung could never—could never insulate itself under your theory. Oh, certainly it could. It could use a CLICRAP agreement. But you said it could use a CLICRAP. Yeah. It could use a CLICRAP. But we'll be back here deciding that case later. So, you know, if they are going to rely on an intermediary, that's—the point I'm making is this is Samsung's problem. This is not the consumer's problem. And am I correct that these are individual consumer cases, correct? Yes. We have two individuals here with a motion to compel arbitration. We don't have a class action. We just have two cases of two people with problems with their phones. Well, in our case, it's a personal injury case. Yes. And theirs is a case where I think that it is, in fact, a class action, the Valesqua, about the representations relating to the waterproof nature of the phone. But our case is, you know, clearly individual consumer, personal injury, having nothing to do with warranty information. So we have, by far, the easiest case you could have here. The only other point that I really want to make is I think they also overstate what these in-the-mail and in-the-box cases say. In those cases, if you look at the facts of those cases, in every one of the cases where the court has compelled arbitration, there has either been an admission by the consumer that they saw the terms and conditions and just chose not to read them. So those are very routine cases. We all know if you don't read it, that's your tough luck. But there was either an admission that they saw the terms and conditions, or there was a factual finding by the district court based on all of the evidence that the consumer, in fact, saw those terms and conditions. There is no in-the-mail case, there is no in-the-box case, where the courts impose some sort of burden on consumers to go rummaging through a box to find out whether there's terms and conditions in there, or rummage through envelopes. There's no case that imposes that sort of duty. There are cases that decide, as a matter of fact, that the consumer has, in fact, seen the documentation, has, in fact, been chosen to ignore it. But I think they take those in-the-box cases and in-the-mail cases way too far. And the Chau and the Scholder case that they say somehow retracts from Norcia's statement that California doesn't follow the hill-in-the-box, they don't say that at all. Chau cites hill only for the proposition that it's no defense that you didn't read terms and conditions. It doesn't say anything about the in-the-box doctrine. And the Scholder case, all it says is that it's permissible to contract by sending out terms and conditions later. But it doesn't say that the consumer doesn't have to see those terms and conditions before there is a contract formed. So I think the law is absolutely clear for all those reasons. The decision of the district court to deny their motion to compel arbitration should be affirmed. Thank you. You have some rebuttal time. Thank you, Your Honor. I'm astounded to hear that there's never been a case where California courts have enforced an arbitration clause based on inquiry notice, which is what I think I just heard, because that happens routinely. That happens constantly. And there's cases cited in our brief. So the Yanko and the Miscellany cases, credit card, arbitration agreements and credit card cardholder agreements were provided by mail. The plaintiffs denied ever receiving the mail that contained the cardholder agreement that had the arbitration clause. Nevertheless, it's enforced. Wright v. Sirius is a satellite radio case. There was a paper welcome kit that was provided. Again, the plaintiff denied receiving it. So if the plaintiff denies receiving it and there's no evidence to controvert that, of course it has to be enforced based on inquiry notice. In fact, the North Sea decision would have been a big waste of time if it turned on actual notice, because the lack of actual notice was not challenged in that case. I also want to address this issue about, you know, there could be various ways to do it better. There could be ways to give better notice. Because let me tell you something, there's always going to be a way to give better notice. It could be in 48-point thought, but then we'd be hearing, well, it should be in 54-point thought. There's a variety of ways to accomplish the function that California law prescribes of on notice, which is that it has to be called to their attention that there are terms and conditions applicable to the transaction. There's no one single formula. There's no magic words. And the problem that a company in Samsung's position faces is that there are many different states. There are many different courts. Maybe a legislature could adopt a generally applicable rule that notice has to be done in a certain way. But it creates a fundamentally chaotic situation for one court after another to say that, well, you need to do this a little differently to make it better. The function for this court should be to determine whether Samsung's notice meets a minimum standard. And it should not be a test of whether they should have or could have done more. I want to address the issue about the language on the outside of the box. So there was some questions about whether the language device purchase subject to wasn't quite as good as it would be if it, for example, said by opening, you accept the terms and conditions. But the words subject to mean exactly the same thing. Again, there's no magic words test here. And if there was, there'd be a serious problem with the equal footing rule in cases like Concepcion and Doctors Associates versus Caserato. In fact, in the Altman case I mentioned earlier, now that was federal common law. That was not California law, but we submit there's probably not a lot of daylight between how California would look at the issue. The cruise ticket, where the contractual terms and conditions appeared on page 11 of the travel booklet, used that exact language. It said that the ticket was issued subject to terms and conditions. That did not present any kind of problem in terms of the court holding, that it was reasonably communicated to the consumer. And therefore, in that case, it wasn't an arbitration provision, but it was a one-year contractual limitations period would be enforced. And so we think the variety of distinctions that Samsung has made here through the improvements in the packaging since the Norcia decision are dispositive in taking this case out of the outcome in Norcia. And applying the standard in Norcia and the other cases we've cited, we think that these various ways of providing notice have put a reasonable consumer on notice, and we ask that the judgments in both cases be reversed and the plaintiff's compelled to arbitration. Thank you. Thank you all for your argument this morning. The cases of Velasquez-Reyes versus Samsung and Samsung versus Ramirez are submitted.
judges: McKeown, Bybee, Gaitan